# Exhibit C

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                     SOUTHERN DIVISION
 3
 4   GARY BRICE McBAY,
          Plaintiff,
 5
 6   VERSUS             CIVIL ACTION NO: 1:07cv1205LG-RHW
 7
     HARRISON COUNTY, MISSISSIPPI,
 8   by and through its Board of
     Supervisors; HARRISON COUNTY
 9   SHERIFF, George Payne, in his
     official capacity; CORRECTIONS
10   OFFICER MORGAN THOMPSON,
     acting under color of state law,
11        Defendants.
12
13
             30(b)(6) DEPOSITION OF HARRISON
14             COUNTY SHERIFF'S DEPARTMENT;
             STEPHEN E. CAMPBELL, DESIGNEE
15
16      Taken at the offices of Dukes, Dukes,
        Keating & Faneca, P.A., 2909 13th
17      Street, Sixth Floor, Gulfport,
        Mississippi, on Thursday, October 1,
18      2009, beginning at 1:23 p.m.
19
20   APPEARANCES:
21      PATRICK R. BUCHANAN, ESQUIRE
        MARK V. WATTS, ESQUIRE
22      Brown Buchanan, P.A.
        796 Vieux Marche' Mall, Suite 1
23      Biloxi, Mississippi  39530
             ATTORNEYS FOR PLAINTIFF
24
25
```

1    Q.    And what did Mr. Martin ask you about
2  the Towner incident?
3    A.    Well, he just -- he just didn't like it.
4    Q.    What did he not like about it?
5    A.    Well, what I got from him was inmates
6  never do anything wrong, correction officers
7  always screw up.
8    Q.    So he felt that in the Towner incident
9  that it was the correctional officers that did
10 wrong to the inmate?
11   A.    Well, they did; but the way he was
12 portraying it, it was -- it was a lot more severe
13 than what happened.
14   Q.    Did he feel that -- did you do an
15 investigative report on James Towner?
16   A.    I did.
17   Q.    Did he feel that your report did not
18 capture exactly what happened?  Is that what he
19 tried to convey to you?
20   A.    No.  I don't know if he read the report
21 or not, but -- I tell you what -- no, he just --
22 he kind of just didn't believe it.
23   Q.    Didn't believe the report?
24   A.    I don't know if he didn't believe the
25 report.  He just didn't believe that -- yeah, he

```
 1    THE WITNESS:
 2            I'm sorry?
 3    MR. WATTS:
 4        Q.   You can answer.
 5    MR. GEWIN:
 6            I'll object to the form of the question.
 7    He's asking for your thoughts, but if you can
 8    answer it, you can give it a shot.
 9        A.   Well, Steve Martin is a well respected
10    guy in his field, but the report -- I read the
11    report, but the sheriff didn't tell me to do
12    anything, okay, pursuant to that report.  And I
13    read it just to read it.  I mean, he gave it to me
14    to read, just to read it.  He didn't say -- he
15    didn't tell me to do anything.  And so I read it.
16            And, you know, he met -- Martin met, I
17    think, with Riley and maybe the sheriff after he
18    completed what he did and so -- you know, I'm not
19    putting anything off on them, but they -- you
20    know, that was their deal.  And, you know, if he
21    told me to do it, do something, you know, if he
22    said go do this, I would have done it.
23    MR. WATTS:
24        Q.   But what were your thoughts when you
25    read that there's -- a very disturbing pattern of
```

1      A.    I'm sorry.  I'm sorry.  There were some
2  I know down in this -- six, is that what it is?
3      Q.    We'll call it five.
4      A.    Five, the corner one next to the tank.
5      Q.    The lower left-hand corner.
6      A.    Yeah.  There were -- I know there were
7  shackles in there before.
8      Q.    I'm going to mark Exhibit 18.  It's
9  called the Use of Restraints.  And under general
10 information it says, No restraint device will be
11 used as a form just for punishment.
12           (Exhibit 18 was marked.)
13 MR. WATTS:
14     Q.    If someone goes into that holding cell
15 because she's making noise, and then shackles her
16 to the floor, would you consider that just for
17 punishing her?
18     A.    For making noise?
19     Q.    She's making noise, and he goes in there
20 and shackles her from the bench and then shackles
21 her to the floor.  Would you consider that just
22 for punishment purposes?
23     A.    No.  I wouldn't do it for making noise.
24     Q.    Okay. And if someone -- hypothetically
25 speaking, if an officer takes someone to the

1  ground face first while their hands are handcuffed
2  behind their back, could that person receive
3  facial injuries because they could not break their
4  fall?
5  MR. BRENDEL:
6           I object to the form.  It causes him to
7  speculate.
8  MR. GEWIN:
9           I join in the objection to form.
10 MR. WATTS:
11      Q.   You can answer.
12      A.   Well, sure, that's possible.
13      Q.   They could bust their chin possibly?
14 MR. BRENDEL:
15          Same objection.
16      A.   They could or they could do -- or
17 nothing could happen.
18 MR. WATTS:
19      Q.   But they could bust their chin, correct?
20 MR. BRENDEL:
21          Same objection.
22      A.   They could crack their skull, I guess.
23 I mean, there are a lot of things that could
24 happen, but a lot of things couldn't happen.
25 MR. WATTS:

1    Q.   I agree.  And if someone were to crack
2  their skull, that would be a pretty serious
3  injury?
4    A.   That would be real bad.
5    Q.   Okay.  And this will be my last video to
6  show you --
7    A.   You got the magic key.
8    Q.   -- if I can get it to come up.  And I'll
9  ask you a couple of questions as to this computer.
10 What I'm going to show you is a video from Aaron
11 Vanderburg in May of 2005.  And this computer
12 you're looking at in front of me, I represent to
13 you that defense counsel gave to us so we can view
14 some digital video of it.  And there's a device on
15 this video.  Is this device the only way you can
16 view digital video from the booking area?
17   A.   It was then, uh-huh.
18   Q.   Is there a different -- do you not have
19 to use that now?
20   A.   Well, when I left, I told you they
21 got -- they had a new Kollector, a new hard drive,
22 and you didn't have to have that.
23   Q.   While it's loading, I'll ask a couple of
24 questions so we can get done.  Are you aware that
25 a number of correctional officers from the booking