IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| JOHN AARON VANDERBURG | § | PLAINTIFF |
| --- | --- | --- |
| | § | |
| VERSUS | § | CAUSE NO. 1:08cv90-LG-RHW |
| | § | |
| HARRISON COUNTY, MISSISSIPPI, BY | § | |
| AND THROUGH ITS BOARD OF | § | |
| SUPERVISORS; HARRISON COUNTY | § | |
| SHERIFF GEORGE PAYNE, IN HIS | § | |
| OFFICIAL CAPACITY; and | § | |
| CORRECTIONS OFFICER RYAN TEEL, | § | |
| ACTING UNDER COLOR OF STATE | § | |
| LAW | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER DENYING TEEL'S MOTION FOR SUMMARY JUDGMENT AND SECOND MOTION TO STRIKE, GRANTING HIS MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART HIS SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendant Ryan Teel's Motion for Summary Judgment, Qualified Immunity, and Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted [180, 184], Supplemental Motion for Summary Judgment [191], and second Motion to Strike [224]. Plaintiff John Aaron Vanderburg brought this action for the alleged abuse he received from Teel while in the custody of the Harrison County Adult Detention Center ("HCADC"). Teel argues (1) he did not act with malice; (2) he acted objectively reasonably in the use of force, (3) which resulted in only a de minimis injury; (4) he was not deliberately indifferent to Vanderburg's medical care needs; (5) alternatively, Vanderburg was not damaged as a result; (6) Vanderburg fails to state a claim under Sections 1985 and 1986; and (6) Vanderburg has no evidence of a conspiracy. Teel further argues that Vanderburg's Exhibits B, D-F, and H-K are inadmissible on the conspiracy claims. The Court has considered the parties'

submissions and the relevant legal authority. The Section 1985 and 1986 claims against Teel are dismissed without prejudice. Summary judgment is granted Teel on the Section 1983 conspiracy to deny access to courts claim. The remainder of the motions is denied.

## FACTS AND PROCEDURAL HISTORY

On the evening of Thursday, May 26, 2005, Vanderburg was arrested and charged with careless driving, DUI, no seat belt, resisting arrest, and possession of paraphernalia by the Pass Christian Police Department. He was placed into the custody of the HCADC. Upon his arrival, Teel and several other officers were using force upon a small female detainee, which included taking her to the floor, wrapping her in a mummy suit, placing a hood on her head, and tying her into a restraint chair, and then leaving her. According to Vanderburg, he asked Teel if he could handle her all by himself. That is when Vanderburg alleges Teel threatened him. One minute and twenty-four seconds later, Teel and other officers take Vanderburg to the ground while removing his socks and shoes.

Vanderburg subsequently filed this lawsuit. He brings claims against Teel under Sections 1983 and 1985 for excessive force; failure to provide medical care; covering up the alleged abuse; and conspiracies to use excessive force and to cover up the alleged abuse.

## DISCUSSION

MOTIONS FOR SUMMARY JUDGMENT

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. To make this determination, the Court must view the

evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

I.   SECTION 1983

Teel seeks qualified immunity on the excessive force claim and summary judgment on the denial of medical care and conspiracy claims.

A.   EXCESSIVE FORCE

Teel argues he is entitled to qualified immunity on the excessive force claim because he did not act maliciously. Alternatively, he acted objectively reasonably under the circumstances. Finally, Teel argues that Vanderburg did not suffer more than a de minimis injury.

In order to invoke the defense of qualified immunity, the "defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). To meet defendant's initial burden, he must "demonstrate that he acted with a good faith belief that his actions were within his lawful authority, and that reasonable grounds existed for this belief based upon objective

circumstances at the time he acted." *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980).

A defendant is then entitled to qualified immunity, unless the plaintiff (1) alleges that the defendant violated a constitutional right, and (2) proves that the defendant's conduct was objectively unreasonable. *Salas*, 980 F.2d at 305-06. Stated differently, qualified immunity does not apply when "the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right [and] the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A defendant's conduct will be considered objectively unreasonable, if a reasonable official would understand that his conduct violates that constitutional right. *Salas*, 980 F.2d at 310. If reasonable officers could disagree over the lawfulness of his conduct, then the defendant is entitled to qualified immunity. *Id.* The officer's conduct is viewed in light of the clearly established law at that time. *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).

The Due Process Clause, applicable to the States via the Fourteenth Amendment, protects a pretrial detainee from excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.11 (1989). The standard for analyzing an excessive force claim under the Fourteenth Amendment is the same as the Eighth Amendment standard. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). This right is violated if there is (1) more than a de minimis injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). To determine whether the force was excessive, the inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for

the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). "Often, of course, there will be no evidence of the detention facility official's subjective intent, and the trier of fact must base its determination on objective factors suggestive of intent." *Id.* Some of these factors would be (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of the forceful response. *Id.* at 1447 n.29.

First, Teel argues that he did not act with malice. Arresting officer Clark Diehl testified that the female detainee "looked Hannibal Lecterized. She was pretty–you know, she had a knit, knit thing on her head. And she was restrained and, you know, her feet were restrained in sort of like–it looked like a beach chair almost, you know." (Diehl Dep. at 43). Vanderburg testified that Teel was "torturing" the lady and "trying to put tape on her mouth," so Vanderburg asked Teel, "[D]o you think you guys can handle that girl all by yourself[?]" (Pl.'s Dep. at 100, 102-03). Vanderburg testified that Teel responded, "[T]his will be you if you don't shut your f[*]ck[*]ng mouth." *Id.* at 102. The video indicates that one minute and twenty-four seconds later, he took Vanderburg to the ground during the dress-out procedure, while Vanderburg was still handcuffed. Specifically, Teel ordered Vanderburg to the booking counter. Vanderburg testified that once there, one of the officers was raising his cuffed hands behind his back, which caused the handcuffs to tighten. Vanderburg said he "looked back and said, man . . . what's going on, man. You know I told him he was hurting my arm, to take it easy is what I said. I said, take it easy, you're hurting me, you're hurting me, because he had my hand up." *Id.* at 108. All Diehl saw was, "it appeared when they took [Vanderburg's] left shoe off that he made, with his

shoulders made, to his left made maybe a little more than a 90-degree turn back in towards the officer who was on his left side." (Diehl Dep. at 44). According to Vanderburg, after he complained that they were hurting his arms, Teel grabbed his torso and threw him onto the ground.

> They slammed me down face first into the concrete floor. . . . I think the weight of the man pretty much got me down, my hands behind my head. I think I went knees first. I think I landed on my good leg first and then ended up on my stomach. And [Teel] put his knee in the back of my neck and proceeded to pull this leg–I'm on my stomach, and he proceeded to pull my bad leg behind my head. And I was like, oh, my God, man, I have a bad leg or something like that. And the lady at the desk says, he does have a bad leg. And [Teel] says, oh, which one, this one? And she said, yes.

(Pl.'s Dep. at 109-10). Vanderburg continued:

> A.   . . . And then [Teel] acted like he was going to [pull] it, and then he did–pulled this one behind my head.
>
> Q.   For the record, he acted like he was going to do the left leg?
>
> A.   Yes, ma'am.
>
> Q.   By the didn't actually pull it up?
>
> A.   He didn't pull the left leg.
> . . .
> Q.   Okay. Then they pulled the–you're alleging they pulled the right leg up?
>
> A.   Correct.

*Id.* at 114. Vanderburg said that Teel's knee on the back of his neck made it difficult to breathe and made him dizzy. Vanderburg said that he was not resisting but was just screaming that he had a bad leg. Then they put him in a holding cell and shackled his handcuffs to the leg of a bench, where they left him for about an hour and a half.

This evidence indicates that Teel slammed a handcuffed Vanderburg down, kneed the back of Vanderburg's neck, pulled his leg over his head, and shackled him to a bench for an hour and a half only because he spoke up for the woman and for himself. This evidence shows that he was restrained and not giving resistance. During the encounter Teel joked about hurting the very leg about which Vanderburg was complaining. This is evidence from which a reasonable jury could conclude that Teel acted with malice.

Alternatively, Teel argues that the force was objectively reasonable. Specifically, he argues that it was not clearly established at the time that a correctional officer could not make a "split second judgment" in taking down an individual who made a "sudden move." (Teel's Mem. Summ. J. at 9-10). Assuming that Teel is correct, the above evidence creates a dispute of fact as to whether Vanderburg was taken down in a split second reaction to his turning, while still restrained, toward Teel, or as to whether he had already made up his mind to use force on Vanderburg if he would not "shut [his] mouth."

Finally, Teel argues that Vanderburg's injuries were not more than de minimis, because they were "not beyond what is constitutionally permissible for a simple take down." *Id.* at 11. Vanderburg responds there is a genuine issue of fact as to whether he suffered more than a de minimis injury.

The Fifth Circuit holds:

> In determining whether an injury caused by excessive force is more than de minimis, we look to the context in which that force was deployed. "The amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances."
> What constitutes an injury in an excessive force claim is therefore subjective--it is defined entirely by the context in which the injury arises.

*Williams v. Bramer*, 180 F.3d 699, 703-04 (5th Cir. 1999) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). For example, in *Williams*, the plaintiff was twice choked by a police officer. *Williams*, 180 F.3d at 704. The first time was during a search of the plaintiff's mouth. *Id.* The second time was after the plaintiff threatened to report the police officer. *Id.* The court held that dizziness, loss of breath, and coughing did not qualify as more than de minimis injuries when the police officer was legitimately searching plaintiff's mouth. *Id.* However, these same injuries did "qualify as a cognizable injury when the victim is maliciously assaulted by a police officer." *Id.* This was because the "second choking of Williams was motivated entirely by malice. Bramer was therefore not legitimately exercising force in the performance of his duties as an officer." *Id.*

In this case there is evidence that the take down was not constitutionally permissible, but was entirely motivated by malice. Vanderburg suffered dizziness and loss of breath, as well as other injuries over and above what the *Williams* plaintiff suffered. Therefore, *Williams* compels the conclusion that there is a dispute of fact as to whether Vanderburg suffered more than a de minimis injury. Teel is not entitled to summary judgment on the excessive force claim.

### B. DENIAL OF MEDICAL CARE

Next, Teel argues there is no evidence that (1) he was deliberately indifferent to Vanderburg's medical needs or (2) that he suffered injury as a result. Vanderburg does not respond to this argument.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by . . . prison guards in intentionally denying or

delaying access to medical care." *Id.* at 104-05. The "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "The mere delay of medical care can . . . constitute a . . . violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "Deliberate indifference . . . occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The "official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter*, 467 F.3d at 463. In addition, Section 1983 requires a showing of proximate causation, which is evaluated under the common law standard. *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005).

For example, in *Easter*, the plaintiff alleged that "Powell refused to provide any treatment to, and ignored complaints of, a patient suffering from severe chest pain that she knew had a history of cardiac problems. Powell's alleged conduct meets the 'deliberate indifference' threshold." *Easter*, 467 F.3d at 464. In this situation, it was inferrable that Powell knew of the substantial risk of harm. *Id.* at 463. The court further noted that Easter's separate delayed treatment claim failed, because he did not allege that it resulted in serious harm. *Id.* at 464. However, he "clearly stated" a violation regarding his refusal to treat claim for the "severe chest pain he suffered during the period of time Powell refused to treat him." *Id.* at 464-65.

Teel first argues he had no subjective knowledge of Vanderburg's medical needs. Four

months prior to his arrest, he had knee surgery on his left knee, because he had "crashed the knee and broke both bones diagonally." (Pl.'s Dep. at 58). On the night of May 26, 2005, he was still having pain and although it "was getting better to where I could walk, . . . I couldn't bend my knee." *Id.* at 60. He told the arresting officers he "was disabled" and "had a bad leg." *Id.* at 95. His scar was noted on the police report. The video shows that Teel was the officer who bent down and removed Vanderburg's left sock and shoe. He was wearing shorts at the time and had a long surgical scar on his left leg. Teel then took him down and Vanderburg favored his left leg, and would not bend it. According to Vanderburg, Teel then "proceeded to pull my bad leg behind my head. And I was like, oh, my God, man, I have a bad leg or something like that. And the lady at the desk says, he does have a bad leg. And [Teel] says, oh, which one, this one? And she said, yes." *Id.* at 110. Vanderburg testified that he kept screaming out that he had a bad leg. Later, he said that he repeatedly complained that it was hurting him. This is evidence from which a reasonable jury could conclude that Teel did have subjective knowledge about Vanderburg's medical needs.

Teel alternatively argues that Vanderburg was not damaged because of this failure to treat. As *Easter* makes clear, in a failure to treat case, the plaintiff may recover for the pain he suffered during the time that the official failed to treat him. *Easter*, 467 F.3d at 464-65; *Thayer v. Adams*, 2010 U.S. App. LEXIS 23292 at *20 (5th Cir. Feb. 4, 2010); *Chapman v. Johnson*, 339 Fed. Appx. 446, 448 (5th Cir. Aug. 3, 2009) (affirming denial of qualified immunity for failure to give Ibuprofen for a swollen ankle). There is evidence that he had been slammed into a concrete floor, and immediately and repeatedly complained of pain in his bad leg. As a failure to treat claim, he may recover for the pain he suffered. Teel is not entitled to summary judgment on

this claim.

### C. CONSPIRACY

Vanderburg asserts Section 1983 conspiracy claims against Teel for the alleged conspiracies to use excessive force and to cover it up. Teel challenges the first conspiracy claim, arguing there was no agreement to assault Vanderburg and he did not suffer a deprivation of a constitutional right as a result. He responds that he has evidence of such a conspiracy and excessive force.

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). In other words, Teel may be held liable for excessive force either directly, as the tortfeasor who inflicted the alleged force, or as a co-conspirator, regardless of who inflicted the excessive force. Because the direct excessive force claim survives summary judgment against Teel, it is not necessary for the Court to consider whether he alternatively has co-conspirator liability at this time.

Teel next argues the second conspiracy claim must fail because Vanderburg is presently bringing a civil action for the alleged excessive force. He responds that there is a genuine issue of material fact as to whether the conspiracy to cover-up existed and whether there was a cover up of the alleged violations.

This particular conspiracy claim alleges a conspiracy to deny Vanderburg's access to courts. To prevail on this claim, he must prove that the conspiracy "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). It is not clear if he is pleading a "forward-looking" or "backward-looking" access claim. A forward-looking access claim is a

case where the "litigating opportunity yet to be gained" is being blocked by the defendants. *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). "The object . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413. He cannot prove a forward-looking denial of access, because he has in fact filed the excessive force claim.

A backward-looking claim is about "an opportunity already lost." *Id.* at 414-15. It looks "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414. For a "backward-looking access claim," Vanderburg must prove (1) an underlying cause of action, (2) the litigation of which was frustrated by official acts, (3) which resulted in a lost remedy. *Id.* at 415-16. As for the third element, he:

> must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* at 415. For example, the official deception "may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Id.* at 414.

The record indicates that Vanderburg had a previous excessive force lawsuit on these same allegations. (Campbell Aff. at 2 (¶3)). He brought the case pro se as *Vanderburg v. Harrison County Sheriff's Department*, No. 1:05cv303-LG-JMR. It was filed on June 21, 2005 in this Court. That same day, Vanderburg sent a letter to the Sheriff's Department putting them on notice of the lawsuit, although he did not serve them with process. It was dismissed without

prejudice due to his failure to serve process. He refiled the allegations in the instant case, within the statute of limitations.

On the record as it presently stands, the Court finds no evidence that Vanderburg has lost a remedy for his excessive force claim. There has yet been no loss nor "inadequate settlement." The Court is provided with no evidence of a lost opportunity to sue Teel or others, or the lost opportunity to seek some particular relief. Therefore, Teel is entitled to dismissal of the Section 1983 conspiracy to deny access to the courts.

## II. SECTION 1985

Teel seeks summary judgment on the Section 1985 claims in the event his 12(b)(6) motions to dismiss this claim is denied. As set forth below, the Court finds that the First Amended Complaint fails to sufficiently state a Section 1985 claim. Therefore, this part of the summary judgment motion is moot.

## MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, Vanderburg must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). This does "not require heightened fact pleading of specifics." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56. The Court must view the facts in favor of the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Bell Atlantic*, 550 U.S. at 555) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

I. SECTION 1985

Vanderburg also alleges conspiracy claims under Section 1985. Teel argues that the First Amended Complaint fails to state a Section 1985 conspiracy claim because it does "not describe the type of conspiracies proscribed by these statutes." (Teel's Mem. Summ. J. at 13). Vanderburg responds that there is a genuine dispute of fact as to the conspiracies.

Section 1985 provides a cause of action for several types of conspiracies, under subsections one through three. 42 U.S.C. § 1985. Vanderburg does not expressly cite to the portion or portions of Section 1985 on which he relies. Teel first argues that the First Amended Complaint fails to state a Section 1985(1) claim, because it does not allege they conspired to interfere with a federal official's performance of his duties. Subsection one provides:

> If two or more persons in any State . . . conspire to prevent, *by force, intimidation, or threat*, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; *or to induce by like means* any officer of the United States to leave any State, district or place, where his duties as an officer are required to be performed, *or to injure him in his person or property* on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties
> . . .
> the party so injured . . . may have an action for the recovery of damages, occasioned by such injury . . . against any one or more of the conspirators.

42 U.S.C. § 1985(1), (3) (emphasis added).

The First Amended Complaint alleges that Teel conspired with others to conceal the abuse of Vanderburg. Specifically, it is alleged:

> After Vanderburg's beating, Defendants participated in a conspiratorial scheme to camouflage, cover-up, falsely explain and/or deny what in truth and fact happened to Vanderburg.
> In furtherance of this conspiracy, Defendant Teel failed to prepare a use of force report (or at least has not produced such report to this date) to hide the events and circumstances surrounding the beating of Plaintiff Vanderburg.

(1st Am. Compl. at 12 (¶¶33-34)). There is no allegation, however, that this included a conspiracy to use force, intimidation, or threat of a federal official, or to injure a federal officer's person or property. Therefore, the First Amended Complaint does not state a claim under subsection one.

Subsection two prohibits conspiracies to interfere with federal and state court proceedings. 42 U.S.C. § 1985(2). It specifically prohibits conspiracies between:

> two or more persons in any State . . . to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . .; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State . . . with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2). The First Amended Complaint does not allege that Vanderburg was a party or witness in a federal court proceeding. There is no allegation that he was injured for having testified or attended a federal court proceeding. As for the state court proceeding portion of this statute, it requires a showing of racial or other class-based animus. *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986). For the reasons discussed below, he does not allege any racial or class-based animus behind the conspiracy. Further, he does not allege that he was injured while trying to protect the equal rights of others. Therefore the First Amended Complaint

does not state a claim under subsection two.

Finally, subsection three prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws," or to prevent another from voting or advocating in a federal election. 42 U.S.C. § 1985(3). Again, a conspiracy to deprive another of the equal protection of the laws, requires a showing that "some racial, or class-based discriminatory animus lay behind the conspiracy." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). "It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' . . . its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271-72 (1993). Some Fifth Circuit cases only accept racial claims under this provision. *Horaist*, 255 F.3d at 271 n.12; *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n.2 (5th Cir. 1998); *Deubert v. Gulf Fed. Savs. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). *Deubert* held, "*it is well-established* in this circuit that the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Id.* (emphasis added). However, *Deubert* did not address its contemporary cases which held otherwise. For example, one such case held, "*It is well-settled* law that discriminatory animus behind an alleged violation of section 1985(3) must be racially based or in some other way class-based." *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987) (emphasis added). These other Fifth Circuit cases require a class that is based on an "inherited or immutable characteristic," political belief, or association. *Sullivan v. County of Hunt*, 106 Fed. Appx. 215, 220 (5th Cir. 2004); *Hamill v. Wright*, 870 F.2d 1032, 1037-38 (5th Cir. 1989); *McLean v. Internat'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987) (scapegoat employees not

protected class, because it "does not possess discrete, insular and immutable characteristics similar to race, national origin or sex"); *Galloway*, 817 F.2d at 1159; *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066 (5th Cir. 1980). Of course, none of these cases found the allegations of non-racial animus at issue to be sufficient.

Under either view, the First Amended Complaint here misses the mark. The only characteristic Vanderburg alleges he and the other alleged victims share is that they are "accused and arrested citizen[s] temporarily incarcerated as . . . 'pre-trial detainee[s],'" "other inmates," and "other detainees held in Booking." (1st Am. Compl. at 1, 2, 33 (¶¶1, 5)). His allegations, taken as true, do not state a conspiracy motivated by race, another inherited or immutable characteristic, political belief, or association. *Accord*, *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 822 (W.D. Tex. 2007) ("those arrested by the El Paso Police Department" not sufficient to allege racial or class-based animus under Section 1985(2)).

Further there is no allegation that the conspiracy was to prevent another from voting or advocating in a federal election. Therefore the First Amended Complaint fails to state a claim under Section 1985(3). The Section 1985 claims against Teel are dismissed without prejudice.

II.     SECTION 1986

Teel asks for dismissal of the Section 1986 claim. This statute provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [Section 1985], are about to be committed, and having power to prevent or aid in preventing the commission of same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured.

42 U.S.C. § 1986. In other words, the existence of a Section 1985 conspiracy is an element of the Section 1986 claim. Because Vanderburg has failed to plead this element, he has not stated a

Section 1986 claim.

<u>Second Motion to Strike</u>

Teel argues that Vanderburg's Exhibits B, D-F, and H-K are inadmissible on summary judgment to prove his conspiracy claims. As shown above, the Court did not consider these exhibits in sustaining his Section 1983 claim for conspiracy to abuse. Moreover, the exhibits were immaterial to the Court's dismissal of the remaining conspiracy claims. Therefore, Teel's second Motion to Strike is moot.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above, Defendant Ryan Teel's Motion for Summary Judgment [180] should be and is hereby **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Teel's Motion to Dismiss for Failure to State a Claim [184] should be and is hereby **GRANTED.** The Section 1985 and 1986 claims against him are dismissed without prejudice.

**IT IS FURTHER ORDERED AND ADJUDGED** that Teel's Supplemental Motion for Summary Judgment [191] should be and is hereby **GRANTED** as to the Section 1983 conspiracy to deny access to courts claim. The remainder is **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Teel's second Motion to Strike [224] should be and is hereby **DENIED AS MOOT.**

**SO ORDERED AND ADJUDGED** this the 20th day of May, 2010.

                                                  s/ *Louis Guirola, Jr.*
                                                  LOUIS GUIROLA, JR.
                                                  UNITED STATES DISTRICT JUDGE